ELIZABETH J. ARLEO (201730)
ARLEO LAW FIRM, PLC
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
(858) 674-6912
(760) 789-8081 (fax)
elizabeth@arleolaw.com

AZRA Z. MEHDI (220406)
CHARLES K. SEAVEY (297050)
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 (fax)
azram@themehdifirm.com
seavey@themehdifirm.com

*Attorneys for Plaintiff and the [Proposed] Class*

*[Additional counsel appear on signature page.]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFAN O. LINDGREN, on Behalf of Himself and All Others Similarly Situated, | Case No.: |
| | Class Action |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S INVASION OF PRIVACY ACT, CAL. PENAL CODE SECTION 630, *ET SEQ.* |
| vs. | |
| HSBC CARD & RETAIL SERVICES, INC. a/k/a HSBC CARD SERVICES INC., by and through Its Successor in Interest Capital One Financial Corporation, HSBC TECHNOLOGY & SERVICES (USA) INC., and CAPITAL ONE FINANCIAL CORPORATION, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Stefan O. Lindgren ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following based on personal knowledge as to his own experiences and upon information and belief as to other allegations against defendants HSBC Card & Retail Services, Inc. a/k/a HSBC Card Services Inc., by and through Its Successor in Interest Capital One Financial Corporation, HSBC Technology & Services (USA) Inc., and Capital One Financial Corporation (collectively, "Defendants"):

**INTRODUCTION AND GENERAL BACKGROUND ALLEGATIONS**

1. This action arises out of Defendants' policy and practice during the period relevant herein of electronically recording telephone conversations of California credit card holders, including, but not limited to, confidential telephone conversations, without the consent of all parties. Defendants' policy and practice violates California's Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which generally prohibits the recording of communications without the consent of all parties to the conversation. Specifically, Defendants' policy and practice violates Penal Code §632, which prohibits the recording of a confidential communication without the consent of all parties to the communication; and Penal Code §632.7, which prohibits the recording or monitoring of any communication — whether confidential or not — made from or to a cellular or cordless phone without the consent of all parties to the communication.

2. During the relevant time period, HSBC Bank Nevada N.A. ("Bank Nevada") issued credit cards that were serviced by defendant Card Services (and later, by Capital One, after Capital One purchased Card Services). Card Services (and later, Capital One) called credit card holders in California and engaged them in conversations about their credit card accounts. Those conversations concerned personal financial information as to which credit card holders had an objectively reasonable expectation of confidentiality. Card Services (and later, Capital One) frequently called card holders on their cell phones. Card Services (and later,

Capital One) failed to obtain consent from card holders that their telephone calls would be recorded.

3.     During the relevant time period, defendant Tech Services used automated telephone dialing systems and recording devices at the direction of Card Services and Capital One to record the telephone conversations between California card holders and Card Services (and later, Capital One).

4.     During the relevant period herein, thousands of telephone calls with California credit card holders were recorded by Tech Services' telephone systems, at the direction and instructions of defendants Card Services or Capital One, without those card holders' knowledge or consent.

## JURISDICTION

5.     This Court has jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), which provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from the defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interest and costs. The total claims of individual class members in this action are well in excess of $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5). Furthermore, the total number of members of the proposed class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B). Plaintiff is a citizen of California, and Defendants are citizens of Virginia and Illinois. Therefore, diversity of citizenship exists under CAFA as defined by 28 U.S.C. §1332(d)(2)(A).

## VENUE

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because at least one defendant, namely Tech Services, conducted or supported

1  other Defendants' operations from its facilities located in Pomona, California, and
2  is subject to personal jurisdiction in this District at the time the action was
3  commenced. Further, venue is also proper pursuant to 28 U.S.C. §1391(c) because
4  each of the Defendants has or had during the relevant period, sufficient minimum
5  contacts with this District, and otherwise purposefully avail themselves of the
6  business and commerce and markets in this District.

**PARTIES**

7
8  **<u>Plaintiff</u>**

9         7.     Plaintiff Stefan O. Lindgren is a resident of California whose
10 telephone communications were unlawfully recorded by Defendants during the
11 period relevant herein. Plaintiff had and continues to have a Private Label General
12 Motors Credit Card account. The credit card account originated with HSBC
13 Finance Corporation's ("HSBC Finance") subsidiary, Bank Nevada. The account
14 was subsequently sold to Capital One. On at least three occasions after March 23,
15 2009, Defendants called Plaintiff Lindgren on his California cellular telephone and
16 engaged him in confidential telephonic communications about his Private Label
17 General Motors Credit Card account, and electronically recorded the conversations
18 without Plaintiff's knowledge or consent. Defendants did not provide any notice or
19 warning to Plaintiff Lindgren that his conversations with Defendants were being
20 recorded. Plaintiff Lindgren had a reasonable expectation that these conversations
21 were not being recorded.

22        8.     On or after the date that Capital One took over Plaintiff's account on
23 or about May 1, 2012, Capital One called Plaintiff Lindgren on at least one
24 occasion on his California cellular telephone and engaged him in confidential
25 conversation. Upon information and belief and based on statements made on the
26 record by Defendants' representatives in *Fanning, et al. v. HSBC Card Services*
27 *Inc., et al.*, Case No. 12-cv-885 JVS RNB (C.D. Cal.), Tech Services, at the
28 direction and instruction of Capital One and thereafter Capital One, electronically

- 3 -

CLASS ACTION COMPLAINT

recorded these telephonic conversations with Plaintiff without his knowledge or consent. Defendants did not provide any notice or warning to Plaintiff Lindgren that his conversations with Defendants were being recorded. Plaintiff Lindgren had a reasonable expectation that his conversations were not being recorded.

**<u>Defendants</u>**

9.     Defendant Card Services was a Delaware corporation with its principal place of business in Mettawa, Illinois. Defendant Card Services was the credit card and retail services division of HSBC Finance, which during the relevant period herein, was the fifth largest provider of MasterCard and Visa credit cards and the third largest issuer of private label (merchant branded) credit cards in the United States. On or about May 1, 2012, Defendant Capital One acquired all the assets and cardholder accounts of Card Services. Defendant Card Services conducted many of the telephone calls at issue in this litigation, and instructed or required defendant Tech Services to record those conversations.

10.     Plaintiff is informed and believes, and therefore alleges, that Card Services employed the telephone and recording systems that were used to make the non-consensual recordings of confidential and other telephone communications that are at the core of this matter.

11.     Defendant Tech Services is a Delaware corporation with its principal place of business in Mettawa, Illinois.

12.     During the period relevant herein, defendant Tech Services was a provider of information technology and centralized operational and back-end support services to HSBC Finance and all of its subsidiaries. As such, Tech Services provided the infrastructure for dialing and electronically recording the telephone conversations at issue in this litigation. Tech Services used automated telephone dialing systems ("ATDS") and recording devices at the direction of HSBC Finance and its subsidiaries, including Card Services, through what is known at HSBC Finance internally as "business lines or business units." Tech

CLASS ACTION COMPLAINT

Services also managed the telephony architecture for the Credit Card & Retail Services ("CRS") business, including the hardware and software employed to record telephone conversations between Card Services and California individuals at each call center and data processing centers for HSBC Finance and its subsidiaries including defendant Card Services, for the CRS business.

13.   Defendant Capital One is a Delaware corporation with its principal place of business in McLean, Virginia. Capital One is the successor-in-interest to Card Services' assets and liabilities, and is sued herein in that capacity, and also on account of its own actions, as more fully set forth herein.

14.   Upon information and belief, and based upon statements made on the record by Defendants' representatives in *Fanning*, on or about May 1, 2012, Capital One took custody of Tech Services' telephony architecture systems for calling and recording telephone calls. From the time Capital One acquired Card Services' assets and liabilities, until on or about at least March 1, 2013, pursuant to Temporary Service Agreement(s) ("TSA") with Capital One, Tech Services continued to record telephone calls for the CRS portfolio at the direction and pursuant to the instructions and requirements of Capital One.

15.   At all times relevant hereto, defendants Card Services and Tech Services (since at least March 23, 2009) and Capital One (on and after May 1, 2012) recorded telephone communications, including cell phone communications and confidential communications, with individuals located within California without those individual's consent, and upon information and belief, defendant Capital One continued to do so after May 1, 2012, and currently possesses many if not all, the recordings at issue in this litigation.

16.   During the relevant period described herein, Defendants each aided and abetted, encouraged and rendered substantial assistance to each other in furthering the CIPA violations alleged herein.

17.     Defendants Card Services and Tech Services are collectively referred to herein as the the "HSBC Defendants."

**Corporate Background of Defendants**

18.     During the period relevant herein and continuing presently, HSBC North America Holdings Inc. ("HSBC North America") was and continues to be the holding company for the United States operations of the United Kingdom-based HSBC Holdings plc ("HSBC"). HSBC Investments (North America) Inc. is a wholly owned subsidiary of HSBC North America. HSBC Finance and defendant Tech Services are wholly owned subsidiaries of HSBC Investments (North America) Inc.

19.     Until June 30, 2011, HSBC Finance reported the results of its operations in two segments: CML (Consumer & Mortgage Lending) and CRS. The CML segment provided real estate secured and personal non-credit card loans with both revolving and closed-end terms and with fixed or variable interest rates. The CRS segment constituted the business of issuing revolving lines of credit accessible through (i) general purpose credit cards, including all of HSBC Finance and its subsidiaries' co-brand and affinity programs, and (ii) private label credit. This credit-card business, together with certain other non-credit card based lines of credit issued by HSBC USA, Inc. ("HSBC USA") and its subsidiaries, comprised the CRS business of HSBC Finance. On May 1, 2012, substantially all of Card Services' assets and liabilities — particularly those relevant to the issues raised in this litigation — were acquired by defendant Capital One pursuant to an August 2011 purchase agreement ("2011 Purchase Agreement") between HSBC Finance, Tech Services, HSBC USA and Capital One.

20.     In the 2011 Purchase Agreement, Capital One acquired from HSBC Finance, among other things, "[a]ll CRS Accounts and all Gross Receivables and Accrued Interest and Fees related to the CRS Accounts, and all Charged Off Accounts and the right to any recoveries or collections with respect thereto; and (ii)

All CRS Account Agreements, pending applications for CRS Accounts and outstanding solicitations for CRS Accounts." Capital One also acquired, among others, "[s]uch other Liabilities of types … to the extent relating to or arising from [Capital One's] ownership or operation of the CRS Business, Acquired Assets or Assumed Liabilities after the Effective Time." Capital One is the successor-in-interest of HSBC Finance's CRS business.

21.     The sale to defendant Capital One of Card Services' assets and its corresponding call centers, and of Tech Services' telephone recording systems in the second quarter of 2012 resulted in HSBC Finance's remaining card-related operations being discontinued. Prior to June 30, 2011, HSBC Finance reported results of its operations in two segments: CRS and CML. In the third quarter of 2011, HSBC Finance began reporting results of the Card Services' business as discontinued operations. The allegations in this action pertain only to the CRS portion of HSBC Finance's business.

22.     The majority of the employees of Card Services and Tech Services (approximately 3,500) who performed work related to the CRS business, as well as the card holder accounts (approximately 28 million) of the CRS business unit were transferred to Capital One.

23.     Until this sale of assets, the State of California comprised the HSBC Defendants' single largest source of customers and operations — about 9%.

24.     Bank Nevada was a wholly owned subsidiary of HSBC Finance. During the period relevant herein, Bank Nevada, a federally chartered national bank that issued credit cards, was the credit card banking subsidiary of HSBC Finance. Bank Nevada's credit cards were serviced by one or more of the business units of Card Services, depending on the type of credit card. Following the sale of HSBC Finance's CRS business to Capital One, Bank Nevada was expected to discontinue ongoing operations and to surrender its national bank charter to the Office of the Comptroller of the Currency ("OCC"). In August 2013, Bank Nevada

CLASS ACTION COMPLAINT

surrendered its national bank charter to the OCC and HSBC Finance became its successor in interest.

25. The State of California comprised Capital One's single largest source of credit card business — about 9.8% in 2013 and 10% in 2012.

**FACTUAL ALLEGATIONS REGARDING THE ELECTRONIC RECORDING OF CONFIDENTIAL TELEPHONIC COMMUNICATIONS WITH THE REPRESENTATIVE PLAINTIFF**

26. Plaintiff had and continues to have a Private Label General Motors Credit Card account. The account originated with HSBC Finance's subsidiary, Bank Nevada, and was subsequently sold to Capital One. On at least three occasions beginning sometime after March 23, 2009, Plaintiff was called by Card Services and/or Capital One on his California cellular telephone. On at least one occasion during the time period March 23, 2009 through May 1, 2012, Card Services and Tech Services called Plaintiff on his cellular telephone and electronically recorded the resulting confidential conversation without Plaintiff's knowledge or consent. On information and belief, Capital One electronically recorded at least one confidential conversation without Plaintiff's knowledge or consent. Plaintiff was not advised at the outset of the calls that the calls might be recorded. In light of the sensitive nature of the personal financial information being discussed during the telephone calls, Plaintiff had an objectively reasonable expectation that his confidential conversations with Defendants were not being overheard, monitored, and/or recorded.

**DEFENDANTS' IMPROPER AND ILLEGAL RECORDING POLICIES AND PRACTICES**

27. Defendants' policies and practices, during the period relevant herein and continuing to the present, were to record telephonic communications with California individuals — whether confidential or not — without advising them at

- 8 -

CLASS ACTION COMPLAINT

the outset of each telephone call that the call was being recorded, in violation of California Penal Code §630, *et seq.*

28.     Defendants did not obtain consent from Plaintiff Lindgren or class members to record any of the telephone conversations described herein prior to the time they recorded those calls. In June 2011, the district court in *Bailey v. Household Finance Corp.*, Case No. 10-cv-00857 WQH RBB, in the Southern District of California, held that the Bank Nevada credit card agreement failed to inform customers that their calls with Card Services would be recorded. On May 16, 2013, the district court in *Fanning*, in the Central District of California, issued a similar ruling following *Bailey*.

29.     Card Services, in conjunction with Tech Services, designed and implemented an extensive call center system that was sufficient to handle millions of consumer transactions. During all times relevant to the CIPA claims made herein, the system included 28 domestic and international call centers from which customer calls were placed and received on behalf of the CRS business units. Tech Services had 53 recorders in North America for calls made on behalf of the CRS business units, among others.

30.     Tech Services operates, implements and manages the telephony architecture and infrastructure necessary to meet the call recording strategies set by the CRS businesses. At the direction of the relevant CRS business unit, Tech Services' telephony infrastructure dialed and electronically recorded the telephone conversations with California individuals. The volume of calls was extraordinary.[1] Defendant Tech Services used various computer databases and servers, including

---

[1]     Defendants currently have in their possession, custody or control, approximately 90 million audio telephone recordings, a substantial portion of which are recordings of individuals in California, which was HSBC Finance's single largest source of customers and operations.

CLASS ACTION COMPLAINT

servers in each call center, to store and retrieve the electronic recordings. Records of recordings and actual recordings were also archived at facilities located *inter alia*, in Volo and Vernon Hills, Illinois; Las Vegas, Nevada; Sioux Falls, South Dakota; Tigard, Oregon; and Salinas, California.

31.     Under the 2011 Purchase Agreement with Capital One, this telephone recording system was accessible by Tech Services to execute the telephone dialing and recording policies pursuant to Capital One's instructions and requirements at least up to and including March 1, 2013. Domestically, telephone call centers have been and still are located in, among other places, California, Nevada, Oregon, Illinois, South Dakota and New York. Each of these call centers handled millions of calls per month. By way of example, the Las Vegas, Nevada facility handled more than six million calls in August 2009 alone. Those calls were made exclusively in connection with CRS accounts. In connection with the acquisition of certain Card Services and Tech Services assets by Capital One, over 20 of the call centers were transferred to Capital One. Pursuant to the 2011 Purchase Agreement, HSBC Finance transferred to Capital One CRS call center operations located in Chesapeake, Virginia, Brandon and Jacksonville, Florida; New Castle, Delaware; Buffalo and Walden New York; and Elmhurst, Illinois. At times relevant herein, HSBC Finance shared with Capital One call center facilities located in Chesapeake, Virginia; Tigard, Oregon; and Salinas, California. Upon information and belief, Capital One continues to monitor and record calls made to card holders whose accounts it obtained through the 2011 Purchase Agreement. After May 1, 2012, pursuant to TSA(s) with Capital One, Tech Services continued to maintain, oversee and/or have access to telephone systems call centers and telephone recordings in connection with Capital One's credit card business that it acquired from HSBC Finance.

32.     The central ATDS (automated telephone dialing system) was, and currently continues to be, used by Defendants to initiate up to two million debt

CLASS ACTION COMPLAINT

collection calls a day. The ATDS was used by Card Services. Approximately 10% (or 200,000) of these calls were made to California individuals. Defendants' policy and practice was to set the ATDS to call the consumer's home, business, and cellular telephones up to ten times a day. Depending on the instructions given by each CRS business unit, 3% to 30% of all of the telephone calls (at times up to 100% of the calls in certain businesses) were set to record by Tech Services and recorded, using centralized call recording hardware and software systems called "Witness" and "EQuality Witness." Recording began on or before the moment when the California individual receiving the call was connected with a Card Services representative.

33.     Card Services' and Tech Services' policy and practice during the relevant period was ***not to provide any verbal notice or warning*** during the call to credit card customers that the calls are being recorded. Defendants admitted that in the *Bailey v. Household Finance Corporation of California, et al.*, Case No. 10-cv-00857 WQH RBB (S.D. Cal.) and *Fanning* lawsuits.

34.     CIPA prohibits the recording of certain telephone communications without first obtaining the consent of all parties to the conversation. Cal. Penal Code §630, *et seq*. The right protected by CIPA is not against the betrayal of a party's confidence by the other party. Rather, CIPA is a strict liability statute that protects against recording or simultaneous dissemination to an unannounced second auditor without all parties' consent.

35.     California Penal Code §632 prohibits the recording of confidential telephone communications without first obtaining the consent of all parties to the conversation.

36.     Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c). In other words, a communication is confidential "if a party to

that conversation has an objectively reasonable expectation that the conversation is not being overheard."

37.    In light of the sensitive nature of the personal financial information being discussed in the calls with Defendants, Plaintiff had an objectively reasonable expectation that the conversations were not being recorded.

38.    Section 632.7 does not require that a communication be confidential in order to be provided protection from interception or recording. The text of §632.7 contains no reference to "confidential communications;" and it protects *all* cell phone communications that are recorded without the consent of both parties.

39.    Defendants have engaged in a pattern and practice of recording a substantial percentage of their telephonic communications with individuals located in California. Defendants' telephonic communications involved sensitive personal financial information.

40.    In violation of the CIPA, Defendants intentionally, and without the consent of all parties, by means of an electronic recording device, recorded confidential and/or non-confidential telephonic communications with Plaintiff and other similarly situated individuals in California.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2)–(3).

42.    Plaintiff seeks to represent the following Class:

All California individuals, who, at any time during the applicable limitations period beginning March 23, 2009, including any period tolled preceding the filing of this complaint through the date of resolution, were called by Defendants, and participated in, one or more telephone conversations with representatives of Card Services and/or Capital One and whose calls were electronically recorded by

CLASS ACTION COMPLAINT

Card Services and/or Tech Services and/or Capital One without their consent.

43.    Plaintiff seeks to represent the following subclasses:

a.    All California individuals, who, at any time during the applicable limitations period beginning March 23, 2009, including any period tolled preceding the filing of this complaint through the date of resolution, were called by, and participated in, one or more conversations concerning their credit card accounts with representatives of Card Services and/or Capital One, and whose calls were electronically recorded by Card Services and/or Tech Services and/or Capital One without consent (hereinafter the "§632 Subclass").

b.    All California individuals, who, at any time during the applicable limitations period beginning March 23, 2009, including any period tolled preceding the filing of this complaint through the date of resolution, were called by, and participated in, one or more cellular telephone conversations with representatives of Card Services and/or Capital One, and whose calls were electronically recorded by Card Services and/or Tech Services and/or Capital One without consent (hereinafter the "§632.7 Subclass").

44.    Subject to additional information obtained through further investigation and discovery, Plaintiff may expand or narrow the foregoing Class definition by amendment or amended complaint, as permitted by the Court.

45.    The identities of the Class members are ascertainable from Defendants' business records, including the identities of Class members who were called on cellular phones.

46.    This action has been brought and may properly be maintained as a class action because:

CLASS ACTION COMPLAINT

a.  ***Numerosity***: Defendants called and recorded millions of calls. Approximately 10% of those calls were with California residents. Accordingly, the Class is so numerous that joinder of all members is impractical.

b.  ***Common Questions Predominate***: There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members, including among others: (i) whether Defendants had and continue to have a policy during the relevant period of recording telephone calls made to California residents; (ii) whether Defendants have a policy or practice of failing to obtain consent to record confidential telephone communications with California individuals in violation of the CIPA (Cal. Penal Code §632, *et seq.*); (iii) whether Defendants have a policy or practice of failing to obtain consent to record cellular telephone communications with California individuals in violation of Cal. Penal Code §632.7; and (iv) whether members of the Class are entitled to statutory damages and/or an injunction.

c.  ***Typicality***: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class have similar claims and remedies arising out of Defendants' common course of conduct complained of herein.

d.  ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is committed to vigorously litigating this matter, and has retained counsel experienced in handling class claims and claims involving CIPA. Neither Plaintiff nor Plaintiff's counsel have any irreconcilable conflicting interests that might cause them not to vigorously pursue this claim.

CLASS ACTION COMPLAINT

e. ***Superiority and Manageability***: A class action is superior to other available means for the fair and efficient adjudication of this controversy on a group-wide basis since individual joinder of all members would be impracticable, particularly as individual Class members have no way of discovering that Defendants recorded their telephone conversations without their knowledge or consent. Class action treatment is manageable as it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since individual members' claims for damages are modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. Important public interests will be served by addressing the matter as a class action and substantial economies to the litigants and to the judicial system will be realized, because Defendants have acted on grounds that generally apply to the Class so that injunctive or declaratory relief is appropriate to the Class as a whole. The potential for varying, inconsistent or contradictory adjudications will be avoided if this matter is litigated on a class-wide basis.

47.    Notice to the proposed Class may be provided by direct mail, by first-class mail, e-mail, or other reasonable means, or alternatively by publication.

## THIS CLASS ACTION IS TIMELY

48.    On July 11, 2013, defendants in the *Fanning* lawsuit (Card Services and Tech Services) were ordered to produce a "list of names, address, and phone numbers of outgoing calls made to card holders with California addresses during the class period," March 23, 2009 through May 1, 2012. On July 19, 2013, Card

CLASS ACTION COMPLAINT

Services and Tech Services produced a list of over 282,000 California residents whom they identified as having records of recorded conversations, and whose conversations they may have recorded. Plaintiff was identified as one of the California individuals on the July 19, 2013 list. In or about late July 2013 or early August 2013, Plaintiff learned that he had been identified on Defendants' July 19, 2013 list.

49.    On August 15, 2013, the Magistrate Judge in the *Fanning* lawsuit ordered Card Services and Tech Services to produce all recordings of any telephone conversations with 27 specifically identified California residents. Plaintiff was one of those 27 individuals. On or about September 5, 2013, Card Services and Tech Services produced a recording of Plaintiff's confidential telephone communications with Card Services' representative. On or about September 10, 2013, Plaintiff learned about the actual recording. Prior to that time, Plaintiff had been unaware of the fact that Card Services and Tech Services had recorded his conversations.

50.    The recorded telephone conversation produced by Card Services and Tech Services in the *Fanning* lawsuit concerned purchases made on Plaintiff's Private Label General Motors Credit Card account. No verbal notice or warning was provided to Plaintiff that the call was being recorded or monitored. The information discussed was confidential in nature because it concerned Plaintiff's private financial information. Plaintiff had a reasonable expectation of confidentiality and was unaware that the call was being recorded.

51.    HSBC Defendants called Plaintiff on his California cellular telephone number. Plaintiff received multiple calls from HSBC Defendants during the time period February 1, 2009 through May 1, 2012. After May 1, 2012, Plaintiff received multiple calls from Capital One regarding his credit card account.

52.    On October 7, 2013, Plaintiff moved to intervene as a class representative in the *Fanning* lawsuit. Credit Services and Tech Services opposed

CLASS ACTION COMPLAINT

the motion on the grounds that the original class representatives lacked standing. On November 21, 2013, Plaintiff's motion to intervene was denied without prejudice. The court found "it proper to dismiss Lindgren's Motion to Intervene without prejudice, pending resubmission when the standing of the Plaintiffs has been determined." The *Fanning* court stayed the matter pending the adjudication of the standing issue and ordered briefs to be filed by March 3, 2014. The court on May 6, 2014 determined that there are issues of fact relating to standing in the *Fanning* case. Accordingly, Plaintiff files this action to preserve his claim as well as the claims of other similarly situated individuals.

53.    The complaint here is timely. Although the applicable statute of limitations for violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a)), this rule is subject to the "discovery rule." Consequently, the time does not begin to run on actions brought under CIPA until the plaintiff discovers or should have discovered his injury. Under the facts detailed herein, Plaintiff was not aware that he was being recorded due to the secret nature of the recordings as well as Defendants' failure to provide any notice or warning to Plaintiff or to obtain prior consent to such recordings from Plaintiff.

54.    Plaintiff is or was properly a member of the proposed classes in *Bailey, Afrasiabi* (as discussed herein), and *Fanning* class actions lawsuits. The HSBC Defendants have been on notice of the *Bailey* class action since at least January 15, 2010 during which time the statute of limitations on the claims of the Plaintiff here as well as the putative class, has been tolled.

55.    On March 23, 2010, a class action lawsuit was filed on behalf of Debra Ann Bailey in the Superior Court of California, County of San Diego naming Household Finance Corporation of California and 10 Doe defendants. The case was entitled *Bailey v. Household Finance Corporation of California, et al.*, Case No. 37-2010-00088295-CU-BT-CTL. The *Bailey* complaint asserted claims under CIPA, Cal. Penal Code §630, *et seq.*, and identified the CIPA class as: "All

CLASS ACTION COMPLAINT

consumers who currently reside in California whose telephonic communications with Defendants were recorded during the time period four years prior to the filing of this Complaint." This complaint thus put Defendants on notice of a proposed class that went as far back as March 23, 2006.

56. On April 23, 2010, *Bailey* defendant Household Finance Corporation of California removed the *Bailey* class action lawsuit to the United States District Court for the Southern District of California. The federal case was assigned Case No. 10-cv-00857 WQH RBB.

57. The *Bailey* First Amended Complaint, filed on June 7, 2010, identified three Doe defendants: Credit Services, Bank Nevada, and the parent corporation, HSBC Finance. Defendants here have therefore had notice of potential claims against them since at least March 23, 2010. First Am. Compl., *Bailey*, ECF No. 14. The First Amended Complaint identified the CIPA class as: "All consumers who reside in California whose confidential telephonic communications with Defendants were recorded without advising such persons at the time of the initiation of such a telephone call that such conversations were being recorded." *Id*., ¶94.

58. On March 7, 2012, plaintiff's counsel of record in the *Bailey* lawsuit sent a letter to defendants' counsel of record in the *Bailey* lawsuit notifying defendants, including HSBC Finance, that Plaintiff's counsel anticipated filing a new class action lawsuit and demanding that all evidence preservation efforts be continued.

59. On March 8, 2012, *Bailey* was dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)–(2) as a result of an individual settlement with Ms. Bailey. Prior to the dismissal of the individual claims in *Bailey*, no class had been certified, nor was any determination made on the merits of class certification in the *Bailey* case. *Bailey* was dismissed only as to the named plaintiff's claims, pursuant to Fed. R. Civ. P. 41(a)(1)–(2), but without prejudice as to putative class claims.

CLASS ACTION COMPLAINT

60.     On March 12, 2012, California resident, Nina Afrasiabi, filed a class action lawsuit in the Southern District of California against Bank Nevada, captioned *Afrasiabi v. HSBC Bank Nevada, N.A.*, Case No. 12-cv-685-MMA-DHB, alleging CIPA violations and identifying the class as: "All persons in California whose inbound and outbound telephone conversations were monitored, recorded, eavesdropped upon and/or wiretapped without their consent by Defendant within the four years prior to the filing of the original complaint in this action." Compl., ¶15, *Afrasiabi*, ECF No. 1.

61.     On April 20, 2012, Ms. Afrasiabi filed her First Amended Complaint adding Bank Nevada as a defendant (First Am. Compl., *Afrasiabi*, ECF No. 4) and maintaining the same class definition. On April 26, 2012, the *Afrasiabi* action was voluntarily dismissed, without prejudice, against HSBC Bank USA. Notice of Voluntary Dismissal, *Afrasiabi*, ECF No. 7. No class certification briefing had occurred and thus, no class was certified in the *Afrasiabi* lawsuit. There was no determination on the merits of the class action or the rights of the putative plaintiffs.

62.     On February 7, 2013, Ms. Afrasiabi moved to dismiss her individual case only, without prejudice to the claims of the putative class members. Joint Motion to Dismiss, *Afrasiabi*, ECF No. 28. The court entered an order dismissing the *Afrasiabi* case against defendant Bank Nevada without prejudice to the claims of the putative class. Order, *Afrasiabi*, ECF No. 30.

63.     On June 4, 2012, representative plaintiffs Terry J. Fanning and Tatiana Jabbar filed class action claims alleging CIPA violations against defendants Credit Services and Tech Services entitled *Fanning, et al. v. HSBC Card Services, Inc., et al.*, Case No. 12-cv-885-JVS-RNB.

64.     Plaintiff's CIPA claims as well as the claims of members of the Class and Subclasses he seeks to represent have been tolled under the discovery rule and equitably tolled. Members of the Class and Subclasses are not aware that

CLASS ACTION COMPLAINT

Defendants have recorded their confidential telephone conversations. Plaintiff and members of the Class and Subclasses were unable to discover that their conversations were recorded because only Defendants were aware of which calls were recorded and no verbal notice or warning was provided at the outset of or during the calls. This complaint is thus timely and Defendants have been on notice of the class proposed herein.

**FIRST CAUSE OF ACTION**

**(Unlawful Recording of Confidential Communications)**

**(Against All Defendants)**

**Violation of Cal. Penal Code Section 632**

65.   Plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

66.   At all times relevant herein, Defendants routinely communicated by telephone with Plaintiff and other members of the Class and §632 Subclass in connection with Plaintiff and §632 Subclass members' credit card accounts.

67.   At all times relevant herein, Defendants made use of a software system that enabled them to secretly record telephone conversations between Plaintiff and members of the Class and §632 Subclass on the one hand, and Defendants on the other hand.

68.   In each of their conversations with Defendants, Plaintiff and members of the Class and §632 Subclass discussed their credit card accounts and personal financial circumstances and affairs. It was reasonable for the Plaintiff and members of the Class and §632 Subclass to expect that the conversations would be confined to the parties to the conversation, and that their conversations were not being overheard or recorded. Each of the conversations between Defendants and the members of the Class and §632 Subclass was a "confidential communication" within the meaning of California Penal Code §632(c).

CLASS ACTION COMPLAINT

69.     California Penal Code §632 prohibits a party from electronically recording confidential conversations without two-party consent. Defendants' confidential telephone communications with Plaintiff and members of the Class and §632 Subclass were secretly and surreptitiously recorded by Defendants without obtaining consent to record such conversations.

70.     Defendants' practice of recording telephone conversations with Plaintiff and members of the Class and §632 Subclass violated California Penal Code §632(a).

71.     Pursuant to Cal. Penal Code §637.2(a)(1), Plaintiff, the Class and §632 Subclass members are entitled to recover statutory damages in the amount of $5,000 per violation.

72.     Plaintiff's counsel is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5 and the Private Attorney General substantial benefit and common fund doctrines.

73.     Pursuant to Cal. Penal Code §637.2(b), Plaintiff also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA.

**SECOND CAUSE OF ACTION**

**(Unlawful Recording of Cellular Phone Communications)**

**(Against All Defendants)**

**Violations of Cal. Penal Code Section 632.7**

74.     Plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

75.     Plaintiff participated in one or more telephone calls made to his cellular phone by Defendants.

76.     Plaintiff is informed and believes that, at all relevant times, Defendants had and followed a policy and practice of using a telecommunications

CLASS ACTION COMPLAINT

1  system that enabled them to surreptitiously record cellular telephone

2  communications between Plaintiff and members of the §632.7 Subclass.

3      77.    Plaintiff is informed and believes that, at all relevant times,

4  Defendants had and followed a policy and practice of intentionally and

5  surreptitiously recording cellular telephone conversations with Plaintiff and

6  members of the §632.7 Subclass.

7      78.    Plaintiff is informed and believes that, at all relevant times,

8  Defendants had and followed a policy and practice of not advising or warning

9  Plaintiff and members of the §632.7 Subclass that their cellular telephone

10  communications with Defendants would be recorded. Defendants did not obtain

11  consent of Plaintiff and members of the §632.7 Subclass to the recording of those

12  conversations.

13      79.    Defendants' conduct as described above, violated Cal. Penal Code

14  §632.7(a).

15      80.    Pursuant to Cal. Penal Code §637.2(a)(1), Plaintiff and §632.7

16  Subclass members are entitled to recover statutory damages in the amount of

17  $5,000 per violation.

18      81.    Plaintiff's counsel is also entitled to attorneys' fees and costs pursuant

19  to Cal. Civ. Proc. Code §1021.5 and the Private Attorney General substantial

20  benefit and common fund doctrines.

21      82.    Pursuant to Cal. Penal Code §637.2(b), Plaintiff also seeks a

22  preliminary and permanent injunction to restrain Defendants from committing

23  further violations of CIPA.

24  **PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiff, on behalf of himself and members of the Class and

26  §632 and §632.7 Subclasses, pray for the following relief:

27      A.    An order certifying the Class and §632 and §632.7 Subclasses

28  as defined above, including any modification made to the definition during the

CLASS ACTION COMPLAINT

certification process, appointing Stefan O. Lindgren as the representative of the Class and §632 and §632.7 Subclasses, and appointing counsel for Plaintiff as lead counsel for the Class and §632 and §632.7 Subclasses;

        B.     An order declaring that the actions of the Defendants, as described above, violated California Penal Code §632.7;

        C.     An order declaring that the actions of the Defendants, as described above, violated California Penal Code §632;

        D.     A judgment for and award of statutory damages to Plaintiff and the Class and §632 and §632.7 Subclasses in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1);

        E.     For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

        F.     For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5;

        G.     For pre- and post-judgment interest at the legal rate; and

        H.     For any other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

Dated: July 18, 2014        ARLEO LAW FIRM, PLC

                /s/Elizabeth J. Arleo

                ELIZABETH J. ARLEO

             16870 West Bernardo Drive, Suite 400
             San Diego, CA 92127
             (858) 674-6912
             (760) 789-8081 (fax)
             elizabeth@arleolaw.com

CLASS ACTION COMPLAINT

AZRA Z. MEHDI
CHARLES K. SEAVEY
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 (fax)
azram@themehdifirm.com
seavey@themehdifirm.com

STEPHEN C. MAXWELL
RANDALL E. TURNER
BAILEY & GALYEN
1300 Summit Avenue, Suite 650
Ft. Worth, TX 76021
(817) 417-9660
(817) 719-9484 (fax)
smaxwell@galyen.com
rturner@galyen.com

JOHN S. BRANNON
BAILEY & GALYEN
1901 Airport Freeway
Bedford, TX 76021
(817) 359-7035
(817) 685-9422 (fax)
jbrannon@galyen.com

*Attorneys for Plaintiff and the [Proposed]
Class*

CLASS ACTION COMPLAINT

- 24 -